L. C. PROVINES, Administrator, Respondent, v. C. A. WILDER, Appellant.

**St. Louis Court of Appeals, February 12, 1901.**

1. **Promissory Note: SURETY: CONSIDERATION FOR EXTENSION: CREDITOR: CO-PARTNERSHIP.** The obtention by a creditor of the assets of a firm in payment of the private indebtedness of one of its members, if legally acquired by the consent of all of the members of the firm, might well furnish a valuable consideration for a promise of further extension.

2. ———: ———: ———: PLEADING AND PRACTICE. But in order to be available, such fact would have to be pleaded by the party claiming to be released.

3. ———: ———: ———: ———: ANSWER. In the case at bar, the answer not only wholly fails to plead such consideration, but alleges in positive terms that the principal debtor on the note was the sole vendor of the machine.

Appeal from Audrain Circuit Court.—*Hon. Elliot M. Hughes,* Judge.

AFFIRMED.

STATEMENT OF THE CASE BY THE COURT.

This action is by the administratrix of the indorsee of a promissory note which, together with the credits on its back, is to-wit:

"$250.00                              February 15, 1886.

"Twelve months after date I promise to pay to the order of Hiram Wommack, two hundred and fifty dollars at 10 per cent interest from date, value received.

(Signed)                              "H. L. Ahlfeldt.
                              "B. H. Wilder, Security.
                              "C. A. Wilder, Security."

Upon the reverse side of said note there appears the following:

"February 15, 1887.—Paid $25.00 dollars.

"February 15, 1888.—Paid $25.00 dollars.

"February 28, 1889.—Paid $25.00 dollars.

"February 20, 1890.—Paid $25.00 dollars.

"February 21, 1891.—Paid $25.00 dollars.

"For value received this note is sold and assigned to Mrs. Kate Brown without recourse in anyway upon the estate of Hiram Wammack or on me.

"Louisa Wommack,

"Administratrix.

"Paid $25.00 March 26, 1892.

"Paid $30.90 October 7, 1893."

The defendant Wilder was a surety on said note, which fact he alleges in his answer and claims exoneration on the ground that on the date of the last credit on said note, the then holder, without his knowledge, entered into an agreement with the principal on said note, Ahlfeldt, whereby she extended the time of its payment for one year from the date of said credit, in consideration of the sale to her of a sewing machine by said Ahlfeldt for the sum of said credit, such sum being less than the real or market value of said machine. The reply denied the foregoing allegations of defendant's answer. In support of the special defense set up in the answer, defendant adduced testimony to the effect that about the date of the last credit on said note, the then holder, Mrs. Kate Brown, went to the store where the principal debtor on said note conducted a hardware business under a co-partnership with his brother, August Ahlfeldt, and "asked him if he couldn't pay something on that note or pay the note, and he said he didn't see how he could now, that money matters were very close and he. didn't see how he could do anything just now; she spoke

about wanting to buy a sewing machine, she seen we had sewing machines advertised on the sale bill and she spoke to him and asked him if he would let one of those sewing machines go on the payment, that she would buy one, and he said yes he supposed so." The foregoing testimony was given by the brother and co-partner of the principal debtor on the note. The witness further stated that he was thereupon appealed to and asked if he would consent to this arrangement; that he replied he would do so, whereupon Mrs. Brown said she would probably buy a machine at the auction sale which was then being conducted by the firm, if .it did not cost her over thirty-one or thirty-two dollars, and would credit the amount of her bid on the note and extend its payment until next spring; that she did attend the sale on the next day and did bid, being the highest and best bidder, $30.90, as the price for a sewing machine auctioned off at said sale, and that the principal debtor entered the credit of this sum on the note, which was subsequently brought by her for that purpose. There was a verdict and judgment for plaintiff for the balance due on said note, from which defendant appealed.

*P. H. Cullen* for appellant.

(1) The court erred in refusing the instructions offered by defendant and in giving the instructions offered by the plaintiff, because the proof showed that payment was made out of the property of Ahlfeldt Bros. on the individual debt of H. A. Ahlfeldt, and payment by a stranger, or a third party, of any part of a debt is a valuable consideration and will support a promise to extend. Bishop on Contracts (Enlarged Ed.), sec. 53, and cases there cited; 18 Am. and Eng. Ency. of Law, p. 231, and cases cited. (2) The giving and refusing of said instructions can not be sustained for an-

other reason.　The contract by which Mrs. Brown obtained the machine was fully executed and hence, even though not supported by a consideration, will support the promise to extend the time.　Bishop on Contracts (Enlarged Ed.), sec. 50; Bishop on Contracts (Enlarged Ed.), secs. 80, 81, etc.

*O. Hitt* for respondent.

The following elements or circumstances must unite in order to constitute an indulgence which will discharge the surety: First.　A consideration, for without it the promise would not be binding.　Second.　An agreement to indulge, for without it the hands of the creditors are not tied.　Third.　The agreement must be to indulge for a definite and fixed time.　Fourth.　The indulgence must be without the surety's assent, for if he assents he is a party to it.　Fifth.　The indulgence must be without reservation of remedy against the surety. Sixth.　The agreement must be with a principal and not with a stranger.　2 Daniel on Neg. Inst. (3 Ed.), sec. 1315, p. 330.

BOND, J.—There is nothing in the substance of the contract between Mrs. Brown and the two Ahlfeldts, at the time of its formation, which tends to prove an agreement on her part, for a valuable consideration, to forbear the collection of her note for a definite period of time.　The two partners simply agreed that she might pay for a sewing machine, if she was the highest and best bidder when it was sold in the progress of an auction of some of the firm assets, by crediting the amount of her purchase as so much money on a note which she held against one of the partners.　In such a transaction she did not get the article bought at a reduced rate, for it is not pretended that she had any advantage over any other bidder at the auction sale or that the auctioneer was directed to receive

her bid at a specified sum and strike off the machine to her. This demonstrates that there was no foundation in fact for the special defense set up in the answer that she bought the machine at less than its market value. For even if it might have sold for more in the usual course of dealing, the fact that the partners had advertised its sewing machines for sale at auction, open to all bidders, renders it absurd to say that they made a special reduction of price to plaintiff's intestate. As there is nothing in the contract, therefore, which imported the slightest detriment to the seller of the machine, or the slightest advantage to plaintiff's intestate over any other purchaser at the auction sale, we are at a loss to see any element of a valuable consideration to support the contract for delay, if there was any *competent* evidence in this record that such a contract was made. Indeed, the entire transaction seems to have been solely for the benefit of the payor on the note, for his brother testified that he (witness) thought it better to let him (the payor) make a payment in this way than to take the money out of the firm.

It is suggested that the authority given to plaintiff's intestate to credit the note with the amount of her bid for the machine, furnished a sufficient consideration, because the thing bought was a partnership asset. The complete reply to this is, that the defendant made no such claim of any such consideration in the answer filed by him in this cause. The answer alleges that the sale was made by Ahlfeldt, the payor on the note, not by the firm; hence it is clear appellant can not rely on an unpleaded defense. That parties are concluded by their pleadings and restricted, in the maintenance of an affirmative defense, to the special allegations upon which it is based, is elementary law.

The obtention by a creditor of the assets of a firm in payment of the private indebtedness of one of its members, if

legally acquired—by the consent of all of the members of the firm—might well furnish a valuable consideration for a promise of further extension, but in order to be available, such fact would have to be pleaded by the party claiming to be released. The answer in this case not only wholly fails to plead any such consideration, but alleges in positive terms that the principal debtor on the note was the sole vendor of the machine. This averment of the answer is fully sustained by the testimony which shows that the two brothers, by an arrangement exclusively between themselves, agreed that the one who owed the note should account to the firm for the amount bid upon the machine—which was done—and thus have the right to demand of plaintiff's intestate a credit for such sum on the note which she held against him. These views show that the special defense set up in this case was wholly unsustained by the evidence; the judgment is, therefore, manifestly for the right party and is affirmed. All concur.